### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

**TERESA MARIA HARMON**                                                                                   **PLAINTIFF**

**v.**                                                                                   **No. 3:23-cv-395-BJB**

**LOUIS I. WATERMAN AND GOLDBERG**                                                           **DEFENDANTS**
**SIMPSON, LLC**

\*\*\*\*\*

### MEMORANDUM OPINION & ORDER

Teresa Harmon filed for divorce in 2009 and has been fighting her ex-husband in on-and-off state-court proceedings ever since. That acrimonious litigation has included allegations and proceedings related to their divorce, custody of their teenage daughter, disability accommodations, no-contact orders, contempt, COVID-19 accommodations, VA disability determinations, and discrimination allegations. Harmon is a disabled veteran and mother of two, though she is subject to a no-contact order regarding one of her children. *See* Amended Complaint (DN 6) ¶¶ 2, 5, 13, 16, 18. This federal case began in 2023 when she sued her ex-husband's lawyer (Louis Waterman) and his law firm (Goldberg Simpson) under the Americans with Disabilities Act. *Id.* at pp. 16–18.

Harmon seeks a preliminary injunction halting the Defendants' alleged ADA violations, a court order compelling ADA compliance training by the Defendants, compensatory and punitive damages, and civil penalties. *Id.*; PI Motion (DN 14-1). The papers don't make clear what her alleged disability is or how it affects her case. Read charitably, the suit rests on three different theories of liability: (1) Waterman made discriminatory statements about her disability that violated public-accommodations obligations, (2) Waterman and his firm interfered with her right to access the courts, and (3) Waterman and the firm retaliated against her assertion of ADA rights in state court. Even accepting Harmon's account as true—which the Court must at this stage—and even giving this *pro se* plaintiff the benefit of every doubt, none of these three theories states a factually plausible claim that would entitle her to recovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court therefore grants the Defendants' motion to dismiss (DN 9), grants the "supplemental motion to adopt [the]

1

motion to dismiss" (DN 10),[1] and denies Harmon's motion for a preliminary injunction (DN 14).

**1. Public accommodations.** Harmon argues that "discriminatory and attitudinal statements, disability denial, and ableist remarks" that Waterman made during the state-court litigation "amount to discrimination regardless of their impact." PI Motion at 7–8. Over the course of several state-court proceedings, Waterman (on behalf of Harmon's ex-husband) allegedly questioned the genuineness of Harmon's disability, opposed her requests for accommodations in court, and argued that her disability didn't justify delaying the proceedings. *See, e.g.*, Amended Complaint ¶ 33. Regardless of whether Waterman's alleged statements might be considered offensive by Harmon or others, the question under the ADA is whether the statements in question amount to discrimination.

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The ADA's list of public accommodations includes the "office of an accountant or lawyer," so Goldberg Simpson is subject to the Act. § 12181(7)(F). And the statute protects "clients or customers of the covered public accommodation." § 12182(b)(1)(A)(iv). The Act makes it unlawful to (i) deny individuals with disabilities "the opportunity … to participate in or benefit from the ... services ... of an entity," (ii) provide an unequal benefit, or (iii) provide an avoidable separate benefit. § 12182(b)(1)(A)(i), (ii), (iii).

Harmon's claim fails because she was an adversary, not a client. In ADA terms, her complaint doesn't allege that she ever sought "the opportunity … to … benefit from the … services" of Goldberg Simpson. To the contrary, her ex-husband was the firm's client and no allegation indicates that Harmon sought to access or secure the firm's services—which surely would've been a conflict. Nor does she allege that the firm denied her access to services in any other way. Rather, she argues that Waterman and his firm "provided services to" her through "a contractual relationship with [her] former spouse," though she was denied "full and equal enjoyment" of those "services" based on Waterman's "discriminatory and ableist remarks." MTD Response (DN 11) at 6. But Harmon cites no precedent or plausible interpretation—and this Court isn't aware of any—that would control the language or arguments used by a law firm in response to allegations by someone who alleges her disability brings her within the coverage of the ADA. The Act ensures that individuals with disabilities have the same access to public accommodations as anyone else. Harmon has not alleged that Goldberg Simpson refused to represent her—either directly or

---

[1] The Defendants' supplemental filing noted that they "referenced the Plaintiff's Complaint in their Motion, but the Amended Complaint in their Memorandum in Support." Supplemental MTD (DN 10) at 1. So they filed a substantively identical supplemental motion clarifying that they sought "dismissal of the Amended Complaint." *Id.*

through a policy or physical barrier.  So she's failed to state a claim for discrimination under the ADA.

**2. Interference.**  Harmon also argues "that Defendants interfered with rights granted by the ADA … with respect to government services (Title II)" in a way that "affected Plaintiff's right to access … the courts and participate meaningfully in the proceedings."  MTD Response at 9–10.  Specifically, the Defendants allegedly "caused [her state-court] order to proceed *in forma pauperis* to be vacated after it had been approved, thus interfering with her right to appeal any decisions regarding the disability accommodations."  *Id.* at 10.  Harmon had been denied *in forma pauperis* status in at least one prior Kentucky appellate proceeding.  *See* Amended Complaint ¶ 39.  The Court of Appeals initially granted her *in forma pauperis* motion for her appeal related to disability accommodations and Waterman's alleged retaliation.  ¶ 105.  But the court rescinded that order in response to the Defendants' motion to vacate.  ¶¶ 106, 108.[2]

Harmon's interference theory draws on the ADA's anti-interference provision in § 12203(b).  This provision makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of ... any right granted or protected by this chapter."  § 12203(b).  But her allegations, even read generously and assumed true, fall short.  The caselaw concerning this provision is not extensive; indeed, the Sixth Circuit has not yet "confirmed the elements" of an ADA interference claim.  *Willis v. CSL Management LLC*, No. 2:21-cv-10805, 2023 WL 4355031, at *6 (E.D. Mich. July 5, 2023).  But at the very least, a defendant must have done something that has "'the effect of interfering with the exercise of rights' under the ADA."  *Kelly v. Town of Abingdon*, 90 F.4th 158, 171 (4th Cir. 2024) (quoting *Brown v. City of Tucson*, 336 F.3d 1181, 1191 (9th Cir. 2003)).

Harmon  hasn't alleged that the right to proceed *in forma pauperis* is a right granted or protected by the ADA.  *See, e.g.*, *Robles v. Medisys Health Network, Inc.*, No. 1:19-cv-6651, 2020 WL 3403191, at *13 (E.D.N.Y. June 19, 2020) (interference claim failed because plaintiff had "not alleged that the leave that he requested ... was an ADA-protected right"); *see also Reynolds v. American National Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (ADA doesn't cover participation in workers' compensation process created and protected by state law).[3]

---

[2] Harmon's discussion of her interference claim focuses primarily on the Defendants' alleged interference with her access to the courts.  But it also briefly mentions that they "interfered with her rights as to the public accommodations context."  MTD Response at 9.  What this means is entirely unclear—and the pleadings offer no facts in support of this argument.  Harmon doesn't indicate what public-accommodation right the Defendants allegedly interfered with—nor how her interference claim might differ from her discrimination claim.

[3] Harmon nods in the direction of "the Rehabilitation Act of 1973," which "may apply" "[t]o the extent that Defendants interfered with" her *in forma pauperis* rights.  MTD

3

Harmon never says what her disability is or whether and how it relates to her IFP status. She never says that Kentucky's IFP rules and practice affects the ability of her (or other persons with disabilities) to access and participate in legal proceedings differently than it affects other people with limited means but without disabilities. Certainly nothing in the statute or any caselaw the Court is aware of suggests that individuals with disabilities have a right to proceed *in forma pauperis* without meeting the state-established criteria for doing so. "Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities, and it does not require States to compromise their essential eligibility criteria for public programs." *Tennessee v. Lane*, 541 U.S. 509, 531–32 (2004). Harmon doesn't even say why the state court rescinded her IFP designation and how that interfered with any rights she might've otherwise had under the ADA.[4]

---

Response at 10. The interaction between "Title II and Rehabilitation Act issues," she maintains, may "present novel questions of law." *Id.* So novel, perhaps, that she hasn't sketched out what those questions might be—or anything else about a putative Rehabilitation Act claim. *See* MTD Reply (DN 12) at 1 ("Ms. Harmon did not specify which section of the Rehabilitation Act applied to her claims, nor did she allege that the Defendants fell under one of the categories of federal entities" covered by the Act). Nor has she identified any "program or activity receiving Federal financial assistance" that the Defendants might have excluded her from, thereby potentially triggering the Act's protections. *See* 29 U.S.C. § 794. To the extent she purports to raise a Rehabilitation Act claim at all, she hasn't supported it with factual allegations remotely sufficient to survive a motion to dismiss.

[4] Anticipating the jurisdictional tension inherent in this federal challenge to state-court determinations, Harmon "recognizes that this federal court operates under a distinct jurisdiction separate from state appellate courts and does not act as a review body for state court decisions." PI Reply at 1. Yet she goes on to request relief that would appear to require just that. The notion that a federal court could or would review interlocutory state-court sanctions and IFP decisions is adventurous at best. The *Rooker-Feldman* doctrine, discussed below, reflects the "general principal that federal district courts do not stand as appellate courts for decisions of state courts." *RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th 380, 387 (6th Cir. 2021) (cleaned up). To the (surely quite limited, if any) extent Harmon challenges the state court's rulings directly, the *Rooker-Feldman* doctrine bars this Court from awarding her such relief or even taking jurisdiction over her claims. And to the extent she merely challenges the actions of lawyers involved in bringing about those state-court rulings, her claims fail for the separate reasons discussed above. *See Alexander v. Rosen*, 804 F.3d 1203, 1206–07 (6th Cir. 2015) (*Rooker-Feldman* not implicated because plaintiff did "not appeal the state court's child support decision; he challenge[d] the conduct of the individuals who happened to participate in that decision"). Finally, Harmon's allegations and the parties' briefing never indicate whether any state proceedings remain ongoing. If they do, that could raise additional concerns under *Younger v. Harris*, giving this Court an alternative reason to stay its hand and not take any action that might disrupt the state-court case. 401 U.S. 37, 43 (1971) ("Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts.").

4

**3. Retaliation.** Finally, Harmon "alleges that Defendants engaged in retaliatory actions in violation of the ADA." MTD Response at 10 (referring generally to Amended Complaint ¶¶ 41, 42). In particular, she argues that the Defendants retaliated against her for "seeking ADA accommodations and making a discrimination charge against" them by "seeking termination of [her] parental rights, nearly $30,000 in attorney's fees, sanctions, and a restraining order." PI Motion at 9.

Under the ADA's anti-retaliation provision, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To state a retaliation claim, Harmon must allege facts that "establish: (1) [s]he engaged in protected activity, (2) [a] defendant took adverse action against [her], and (3) a causal connection between the protected activity and the adverse action." *Wilbon v. Michigan Dept. of Corrections*, No. 2:13-cv-14404, 2015 WL 1004707, at *3 (E.D. Mich. Mar. 6, 2015) (citing *Penny v. United Parcel Service*, 128 F.3d 408, 417 (6th Cir. 1997)); *see also Constantine v. New Jersey Dept. of Banking and Ins.*, No. 23-2423, 2024 WL 1988829, at *6 (3d Cir. May 6, 2024) (applying same analysis at the pleading stage).

Even assuming Harmon engaged in "protected activity" under § 12203(a), nothing in the allegations indicates that the Defendants took any adverse action *because she was disabled*. *See Hopkins v. Bunzl Retail Services, LLC*, No. 5:22-cv-13, 2022 WL 1693716, at *5 (W.D. Ky. May 26, 2022) (ADA "is a discrimination statute" that "protects individuals who have been discriminated against *because of a disability*").

Harmon's allegations focus on accommodations she sought during contempt and custody proceedings. She asked the state court for a stay so she could "locate a 'Protection and Advocacy (P&A) organization for legal representation and other advocacy services for people with disabilities,'" which the judge granted over the Defendants' opposition. Amended Complaint ¶¶ 23, 31, 33, 40. Shortly thereafter, the Defendants filed a new case seeking to terminate her parental rights, and Harmon again sought disability accommodations in both the contempt and termination proceedings. ¶¶ 41, 46–47. The court granted all her requests except electronic-filing access and a "support person" to help her litigate the case. ¶ 47. Finally, she requested a court-appointed attorney, which the Defendants opposed, questioning whether Harmon was in fact disabled (and requesting attorneys' fees). ¶¶ 49–53. Harmon's reply and subsequent motions sought sanctions "for [Waterman's] discriminatory statements about [her] disabilities and retaliation for asserting her rights under the ADA," and disqualification of Waterman. ¶¶ 54–56.

None of this state-court litigation conduct appears to be protected under the federal anti-retaliation provision. "The ADA is not ... a catchall statute creating a cause of action for any ... retaliation, but protects individuals only from retaliation

5

for engaging in, or aiding another who engages in, activity covered by the ADA." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014). "Protected activity typically refers to an action taken to protest or oppose a statutorily prohibited discrimination." *Id.* (citation omitted). The underlying dispute and Harmon's actions don't appear to have been taken for that reason. Rather, her allegations describe "[l]itigation ... in an unrelated matter" that doesn't bear on "retaliation unrelated to discrimination," which is "not … activity that the ADA protects." *Jones v. City of Cleveland*, No. 1:22-cv-39, 2023 WL 6976631, at *7 (N.D. Ohio Oct. 23, 2023) (ADA didn't prohibit retaliatory termination related to unrelated lawsuit that "did not include allegations of discrimination"). Her requests for accommodation don't describe any unlawful actions by the state court that she opposed. *See, e.g.*, *Small v. Memphis-Shelby County Airport Authority*, No. 2:13-cv-2437, 2015 WL 7776605, at *18 (W.D. Tenn. Dec. 2, 2015) (opposition to lawful conduct not protected).

Nor does she allege that the Defendants opposed her accommodation and sanctions requests because she was disabled. The closest Harmon comes to a plausible factual allegation is her statement—not in her Complaint, but in her response to the Defendants' motion to dismiss—that the Defendants made unspecified "attitudinal statements" and tried to evade the ADA by filing a parallel proceeding. MTD Response at 10. This is conclusory and implausible. What these attitudinal statements are remains entirely unclear. And Harmon is the one who first raised her disabilities in state court, seeking to delay and alter the proceedings on that basis. Nothing indicates that opposing those motions is equivalent to "retaliating" against them, such that anyone who invokes the ADA in a state-court motion is federally protected from adversarial challenge. This makes no sense. If anything, the Defendants' resistance to her claims of disability suggests they acted because they thought she did *not* have a disability, not because she did. Surely ADA retaliation doesn't reach so as far as to equate state-court motions practice with "retaliation" anytime someone mentions a disability.

To be sure, Harmon does invoke some ADA language by describing her state-court sanctions motions as a "discrimination charge." MTD Response at 10. But she never explains—as a matter of fact or law—why this might count as "a charge … in an investigation, proceeding, or hearing under" the ADA. § 12203(a). The state-court litigation apparently didn't involve an ADA claim, making it hard to understand how the litigation might've punished her for participating in it—as the Complaint seems to imply. *See, e.g.*, *Rorrer*, 743 F.3d at 1046 ("The ADA is a discrimination statute and does not protect an employee who participates in arbitration proceedings contesting employment decisions that do not involve any claims of discrimination.").

Nothing indicates that the Defendants took adverse actions against her because she was disabled. *See Penny*, 128 F.3d at 417 (retaliation claim failed because plaintiff didn't allege discriminatory action taken against him). Discrimination under Title II consists of denying a disabled person "meaningful access to a benefit or service" on account of his or her disability. *Bedford v. Michigan*, 722 F. App'x 515, 518 (6th Cir. 2018) (citing *Alexander v. Choate*, 469 U.S. 287, 301

6

(1985)). Harmon's ex-husband, through his lawyers, apparently sought "termination of [Harmon's] parental rights, nearly $30,000 in attorney's fees, sanctions, and a restraining order" in state court. PI Motion at 9. Nothing even hints that this happened because of Harmon's disability, instead of because she and her ex-husband disagreed about important questions of family and financial rights, which they attempted to sort out through ordinary litigation in family court. Her federal allegations don't point to any denial of access to the judicial process or retaliation for doing so that bears any relationship to a disability. *See, e.g.*, *Bedford*, 722 F. App'x at 518 ("To sustain a claim, a disabled person must be denied meaningful access to a benefit or service.") (citing *Alexander*, 469 U.S. at 301).

Indeed, treating the litigation decisions of litigants and judges as "protected activity" and "adverse action" under the ADA would appear to call for the sort of federal second-guessing of state-court rulings that judges may not indulge in. The state court already heard Harmon's objections and (apparently) denied her requests for sanctions and withdrawal based on allegations of disability discrimination. The *Rooker-Feldman* doctrine bars federal district courts from considering "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). To the extent Harmon invites this Court to review the state court's management of its proceedings, jurisdiction doesn't even exist. And to the extent she asks this Court to review the Defendants' litigation conduct that led to those rulings, nothing in Harmon's allegations indicates the Defendants acted against her because she was disabled or engaged in opposing unlawful practices that discriminated against disabled persons. To the contrary, her allegations indicate that the Defendants opposed Harmon's motions because they were representing their client in an adversarial proceeding. This doesn't amount to disability discrimination.

**4. Preliminary Injunction.** Because Harmon has failed to state a claim under the ADA, she cannot establish any likelihood of success, public interest, or third-party harms implicated by her request for a preliminary injunction. So her motion for a preliminary injunction (DN 14) would fail on the merits and is moot given the failure of her underlying claims, notwithstanding her request for a combined hearing under Federal Rule of Civil Procedure 65(a)(2). *See* PI Motion at 1; *Hensley Mfg., Inc. v. Propride, Inc.*, 622 F. Supp. 2d 554, 562 (E.D. Mich. 2008) (denying preliminary-injunction motion).

## ORDER

The Court grants the Defendants' motion to dismiss and supplemental motion (DNs 9 & 10) and denies Harmon's motion for a preliminary injunction (DN 14).

Benjamin Beaton, District Judge
United States District Court